## JOHNSTON v. READING CO.

### No. 9729.

United States Court of Appeals
Third Circuit.

Argued Nov. 4, 1948.

Decided Dec. 6, 1948.

Nathaniel B. Richter, of Philadelphia, Pa. (Richter, Lord & Farage, of Philadelphia, Pa., on the brief), for appellant.

Henry R. Heebner, of Philadelphia, Pa. (Wm. Clarke Mason, of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and KALODNER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is a Federal Employers' Liability suit for personal injuries.[1] There was a directed verdict in favor of the railroad employer and from the judgment entered thereon, this appeal is taken.

The only fact witness was the appellant himself. A diagram of the pertinent area and pictures of the engine involved were in evidence. The accident happened on the westbound siding of appellee on the Fifth Street Bridge, Philadelphia, Pennsylvania, around 11:00 P.M. on September 27, 1945. It was a very dark, clear night. Appellant was a yard brakeman for Reading at the time. He was assisting in a drilling movement which embraced a Diesel engine and twelve freight cars. The cars had been brought to the westbound siding where they were to be left after the engine had been cut off from them. Among other things, appellant's job was to cut off the engine. The remainder of the crew comprised the conductor, a rear brakeman, engineer and a fireman. While the train was at a stop a short distance east of the bridge, appellant, who had been up on the left rear platform of the engine, descended to the ground on the rear right side of the engine in order to cut off the latter from the car behind it. He first disconnected the air hoses, then mounted the rear steps of the locomotive and lifted the cutting lever. Following that he swung over to the first step of the rear steps on the right side of the engine. He said that he was in the act of mounting the side steps of the rear platform of the engine when the latter started forward. He stated that the engine picked up momentum immediately. The bridge abutment was about thirty feet west of where the engine started. On the west side of the abutment with which we are concerned, the clearance between the abutment and the engine was not more than four or five inches. Johnston

---

[1] Federal Employers' Liability Act, 35 Stat. 65, 45 U.S.C.A. § 51 et seq., as amended.

testified that the motion of the engine threw him off balance and back and that he was caught and squeezed between the rear grab irons on the engine and the side of the bridge abutment. As a result he received a brush burn on his right hip and a bad bruise on his left hip.

Johnston testified that he did not think it would have been safe for him to remain on the back step because he would have been liable to be thrown off as the engine went around a little curve at that particular point of the bridge. It is the fact, as the trial court pointed out, that the diagram of the scene showed the track to be perfectly straight in that vicinity. There is some further vague testimony by Johnston that there was an up and down motion of the engine due to a low joint in the rails and that the roadbed beneath them was not solid.

Rule S of the appellee was in evidence. This states that "The conductor or trainman must ride on the engine of freight trains at all times, except when necessary to drop back because of stuck brakes, defects or other causes, or to handle retainers, and must return to the engine as soon as possible." Rule 84 was also admitted which is to effect that a train must not start until the proper signal is given. Johnston said that as he completed the cutting off both the engineer and the fireman could see him. He stated that he did not give any signal to any member of the crew after he had finished the uncoupling operation and that he then "tried to get up on the rear end of the platform, the rear platform on the back of the cab." He also testified that prior to starting an engine after the signal to do so had been given, the engineer must ring the bell and that on this occasion he did not think that the engineer had rung the bell or that any whistles were blown. According to him it was while he was ascending the rear right side steps of the engine that the latter was started up and shortly thereafter he said he was hurt as above outlined.

The trial court's direction of verdict was based substantially on the proposition that appellant had not made out a prima facie case from which the jury could have found negligence on the part of the railroad which contributed to his injury. This would have been justified if appellant's contention, which high lighted his evidence, that what developed as a non-existent curve in the tracks caused the accident had been the only asserted negligence of the railroad appearing in his testimony. However, in addition thereto he stated that it was unsafe for him to ride the rear step of the engine because of the condition of the roadbed; and there was in evidence the company rules that the brakeman in Johnston's position that night was to ride on the engine and that a train should not start until a proper signal was given, with further testimony that, even after a starting signal is received by the engineer, the latter must sound a warning bell preparatory to starting.[2] Having attended to the uncoupling, Johnston testified that he was on his way up the rear side steps of the engine to the engine platform when the engine started off and picked up immediate speed. The testimony he gave is some evidence that the starting of the engine, without any signal from him or warning to him and prior to his reaching its rear platform, bore a causal relationship to the accident. In the circumstances a jury question was created. Eckenrode v. Pennsylvania Railroad Co., 1948, 69 S.Ct. 91.

The judgment of the District Court will be reversed and the case remanded for a new trial.

---

2 Whether the precise composition of the engine and cars constitutes a train is not before us and not passed upon by us.